**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ALEKSANDR GRISHIN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:26-cv-01647** |
| | ) | |
| **CHRISTOPHER BULLOCK,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This case is before the Court to determine if the temporary restraining order issued by the Court should be converted into a preliminary injunction under Federal Rule of Civil Procedure 65 (a) and (b). Aleksandr Grishin filed a Petition for Habeas Corpus (Doc. No. 1) and Emergency Motion for a Temporary Restraining Order (Doc. No. 4). The Court entered a Temporary Restraining Order (Doc. No. 5) based on the verified Petition for Writ of Habeas Corpus and the exhibits. The Court determined that Grishin is likely to succeed on the merits of his claims that his October 19, 2026 detention is unauthorized by 8 U.S.C. § 1226(a) and/or violates the Due Process Clause of the Fifth Amendment; that he is likely to suffer irreparable harm if he is transferred outside the Middle or Western Districts before the Court can obtain the custody record and consider the Petition; and that the balance of equities and the public interest favor preserving the status quo. The parties have filed memorandums on whether a preliminary injunction should be entered. (Doc. Nos. 10, 11). By agreement of the parties, the Court will drop all Defendants besides Christopher Bullock, as they are not necessary to the suit. For the reasons that follow the Court will enter a preliminary injunction.

## I. Findings of Fact

Grishin was arrested and taken into Immigration and Customs Enforcement ("ICE") custody on October 19, 2026 while voluntarily appearing for a routine supervisory ICE check-in. (Doc. No. 1 at 2). Grishin is a native and citizen of Russia. He entered the United States through Mexico via the San Ysidro port of entry on February 22, 2023. (Id.) He received immigration parole. (Id.) Thereafter, he lived in the community for more than three and half years. (Id.) To date, he has no criminal arrests, charges, or convictions in the United States and has not missed ICE check-ins or violated reporting or supervision requirements. (Id.) His parole expired on February 24, 2024. (Doc. No. 10 at 2–3). On April 2, 2026, he was ordered removed from the United States to Russia by an Immigration Judge ("IJ"). (Id.) He then filed a Notice of Appeal to the Board of Immigration Appeals ("BIA") on April 20, 2026, which is pending decision. (Id.) ICE detained him on October 19, 2026, during a scheduled check-in at the Nashville ICE office. He filed this case seeking a writ of habeas corpus.

## II. Conclusions of Law

Grishin invokes § 1226(a), which allows for release or a bond hearing. (Doc. No. 11 at 1). Respondents oppose his release, arguing that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). (Doc. No. 10 at 4). Section 1225(b)(2)(A) states:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C.A. § 1225. Respondents' argument rests on the premise that aliens placed in § 1229a removal proceedings are both applicants for admission as defined in 8 U.S.C. § 1225(a)(1) and aliens "seeking admission," as contemplated in 8 U.S.C. § 1225(b)(2)(A), and thus are subject to mandatory detention under § 1225(b)(2)(A). (Doc. No. 10 at 4). This argument directly

contradicts the analysis and holding of the Sixth Circuit Court of Appeals in Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026), which is a published opinion of the Court, that thus Court must follow. In Lopez-Campos, the Sixth Circuit specifically found that an "applicant for admission" is not necessarily "seeking admission." 175 F.4th at 732. This is because the text of the statute demonstrates that for a noncitizen to be "seeking admission," the noncitizen must be "actively in search of lawful entry into the United States via inspection and authorization by an immigration officer." 175 F.4th at 723. Thus, aliens already present within the interior of the United States are detained under § 1226, and "§ 1225(b)(2)(A)'s mandatory detention scheme does not apply to them." Id.

Respondents argue that Lopez-Campos has no bearing on this case because 8 U.S.C. § 1225(b)(2)(A) states that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceedings under 8 U.S.C. § 1229a[.]" Respondents then state that the Lopez-Campos reasoning is not applicable to Grishin based on § 1225(b)(2)(A). Tellingly, however, Respondents do not cite any cases that support their point. Rather, Respondents cite cases not on point. Jennings v. Rodriguez, 583 U.S. 281 (2018), for example, addresses whether the Immigration and Nationality Act ("INA") required the government to give immigrants bond hearings who were detained for more than six months pending their removal proceedings. Respondents also cite Blanche v. Lau, 609 U.S. 1 (2026), which involved a noncitizen who was classified as an applicant seeking admission by the border officer after temporarily leaving the United States and seeking to return, while charged with trademark counterfeiting. Neither of these cases deal with what statute applies to a noncitizen who has been in the interior of the United States for several years.

Lopez-Campos is on point and controlling. First, the Court in Lopez-Campos already rejected Respondents' argument:

> Even if Petitioners' desired immigration relief was a form of "seeking admission," the government's alternative argument would abut against § 1225(b)(2)(A)'s text. Section 1225(b)(2)(A) applies to applicants for admission only after "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). But for noncitizens like Petitioners who are within the interior, these claims for relief are typically presented before and resolved by an immigration judge, who is expressly not an immigration officer.

175 F.4th at 729 (citations omitted). Here, Grishin sought permission to enter in 2023, and lived in the interior of the United States for three and a half years. His claim for asylum was decided by an immigration judge, who is not an immigration officer, prior to his recent detention. When Grishin was detained, he was physically present in the interior of the country and was contesting his removal through a BIA appeal rather than with an immigration officer at an inspection point. (Doc. No. 11 at 4). Thus, as the Court in Lopez-Campos stated, "Section 1225(b)(2)(A) would not apply to noncitizens in this alternative scenario." 175 F.4th at 729. Section 1225(b)(2)(A) does not apply to Grishin either.

Second, even if the Court were to find that § 1225(b) is the appropriate statute to analyze Grishin's claim, Due Process requires the Court to order that he receive a detention hearing. Respondents argue that Grishin's due process claim fails because "with the expiration of parole, he is now treated 'as if stopped at the border' despite being 'paroled elsewhere in the country for years.'" (Doc. No. 10 at 6) (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)). However, Thuraissigiam involved the due process rights of a noncitizen seeking initial entry at the border, not someone who has resided in the United States for years, as Grishin has. To be sure, in Lopez-Campos, the Court stated its "understanding of § 1225(b)(2)(A)'s scope ensures that noncitizens like Petitioners should have a forum to explain that their backgrounds and

connections to their communities justify release on bond while they undergo their removal proceedings." 175 F.4th at 735. A bond hearing is required in this case.

The Court finds that Grishin is likely to succeed on the merits of his claims that his October 19, 2026, detention is unauthorized by 8 U.S.C. § 1226(a) and/or violates the Due Process Clause of the Fifth Amendment based on Sixth Circuit precedent. Specifically, § 1225(b)(2)(A) does not apply because Grishin was not "seeking admission" as a noncitizen physically present in the interior of the country and contesting his removal through a BIA appeal rather than with an immigration officer at an inspection point. Grishin will suffer irreparable harm if he is not provided a detention hearing or released on bond, because he will not have an opportunity to explain his background and connections to his community to prevent his removal from the United States. The balance of equities and the public interest also favor providing Grishin with a detention hearing or releasing him. Grishin has no criminal arrests, charges, or convictions in the United States and has not missed ICE check-ins or violated reporting or supervision requirements. He has been living in the United States for three and a half years, and is in the process of appealing his removal. The potential harm to Grishin is high. The potential harm to Respondents is minimal. At most, Respondents will face a short delay in detaining Grishin if it ultimately proves that his detention is necessary. While the Court recognizes the importance of the enforcement of immigration laws to preserve American security and public safety, the balance weighs in favor of allowing Grishin an opportunity to be heard by providing him with a detention hearing.

Accordingly, the Temporary Restraining Order is converted to a preliminary injunction, and the Court rules as follows:

1. Respondents, their officers, agents, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, shall not transfer or

remove Petitioner from the Middle or Western Districts of Tennessee while this Order is in effect, unless the Court directs otherwise.

2. Respondents shall maintain Petitioner's reasonable access to his counsel of record, including confidential legal telephone calls and attorney visits, at his place of detention.

3. Respondents' counsel shall notify Petitioner's counsel by email within twenty-four (24) hours of any change in Petitioner's custodial location. Respondents shall file, with their first response in this action, a notice identifying Petitioner's present location and immediate custodian.

4. Grishin's civil administrative detention is governed by 8 U.S.C. § 1226(a), as mandated by Lopez-Campos. Respondents shall have a detention hearing for Grishin within five days.

IT IS SO ORDERED.

WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE